**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JESUS M. CHRISTIAN, et. al.** | |
| **Plaintiffs,** | |
| **v.** | **Case Number:  1:24-cv-00304** |
| **UBER  TECHNOLOGIES,  INC.** *et al.,* | |
| **Defendants.** | |

**DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER LLC'S REPLY
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS**

DEFENDANTS, UBER TECHNOLOGIES, INC. ("Uber") and RASIER, LLC ("Rasier" and collectively "Defendants"), by undersigned counsel, and in response to Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Dismiss, hereby submits this Reply and states as follows:

**INTRODUCTION**

Plaintiffs' Opposition, and its more than 400 pages of supporting exhibits, represent an inappropriate attempt to inject emotion and extraneous claims against Uber, and fails to address the discrete issue raised in Defendants' Motion – that Plaintiffs entered into an agreement with Uber mandating that any claims between the parties are subject to binding arbitration.  Plaintiffs' arguments that their claims are not governed by the Federal Arbitration Act ("FAA") are unsupported by law, and Plaintiffs' choice to not read the Terms and Conditions governing their use of services obtained through the Uber Application does not save their claims.  The injuries to Plaintiffs occurred in the course of Mr. Christian and Ms. Selman's use of Uber's services as

1

contemplated by their agreement to use the Application, and accordingly their claims against Defendants, must be submitted to binding arbitration.

Notably, Plaintiffs' Opposition and related exhibits show the simple facts of this tragic accident are that Co-Defendant Reginald Johnson was heavily intoxicated, driving more than twice the speed limit, and weaving in and out of traffic before colliding with the vehicle operated by Co-Defendant Khalimandakh Ichinkhorol. Despite their efforts to vilify Mr. Ichinkrhorol,[1] Plaintiffs provide no evidence showing that he in any way contributed to the accident. Further, the records provided by Plaintiffs show that both Mr. Ichinkhorol and Ms. Selman have no memory of the accident. *See* ECF 21-5, p. 13 and 84-85. These extraneous claims, victim impact statements from the sentencing of Co-Defendant Johnson, and affidavit of an "expert" who claims she has a right to information from Uber for her research project on alleged public safety issues are of no consequence to the underlying motion and should be viewed as the abusive attempt that they are to distract from the issues in this case and the merits of Defendants' Motion.

I.    **Plaintiffs' recitation of caselaw from other jurisdictions regarding the enforceability of arbitration clauses ignores longstanding District of Columbia precedent favoring arbitration.**

Plaintiffs ask that this Court apply standards espoused by Courts in other jurisdictions in determining whether their claims are subject to the arbitration provision of the Terms and Conditions. Plaintiffs ignore that the applicable standard is state contract law, and the District of Columbia and Court of Appeals for the United States District Court of Columbia have not only long held that the types of arbitration agreements at issue in this case are enforceable but have recently upheld similar contracts.

---

[1] Who, despite Plaintiffs attempts to minimize his suffering compared to their own, has likewise endured significant injuries from this accident.

### A. *Arbitration is a matter of contract determined by state law.*

This Court has found that "[b]ecause 'arbitration is a matter of contract[,]' the 'threshold issue' for a court faced with a motion to compel arbitration is whether the parties entered into a valid and binding arbitration agreement." *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 10 (D.D.C. 2021) (quoting *Rent-A-Ctr. W. v. Jackson*, 561 U.S. 63, 67, (2010)). Further, "Because arbitration is a contractual matter, [the Court] must first determine whether the parties have agreed to arbitrate by looking to state contract law." *Abadi v. Nat'l R.R. Passenger Corp.*, No. 1:22-cv-03684, 2024 U.S. Dist. LEXIS 57077, *6 (D.D.C. Mar. 29, 2024) (alteration in original) (quoting *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021)).

### B. *The District of Columbia has recently upheld nearly identical arbitration clauses.*

At least two recent District of Columbia cases, in both state and federal court, have upheld the enforcement of similarly broad arbitration clauses under remarkably similar circumstances. In *Doucette v. Neutron Holdings*, 288 A.3d 339 (D.C. 2023), which involved a nearly identical issue, and granted arbitration in favor of Lime, the plaintiff rented one of Lime's electric scooters, the scooter's brakes failed, and Ms. Doucette collided with a person riding a bicycle. *Id.*, at 341. She sued Neutron Holdings (d/b/a Lime) for negligence, and Lime filed a motion to compel arbitration based on the User Agreement to which the plaintiff agreed when she downloaded the Lime app. When users download the Lime app, they are presented with an in-app prompt to create an account and sign up, which includes a notice stating: "By signing up, I confirm I am over 18 years old, and I agree to Lime's privacy policy and terms of service." The arbitration clause appeared when the user clicked on a hyperlink to view the terms of service in a separate window.[2] *Id*. Similarly, in

---

[2] That arbitration clause provided: "ANY AND ALL DISPUTES ARISING BETWEEN YOU AND LIME (WHETHER BASED IN CONTRACT, LAW, STATUTE, RULE, REGULATION, ORDINANCE, TORT INCLUDING, BUT NOT LIMITED TO, FRAUD, ANY OTHER INTENTIONAL TORT OR NEGLIGENCE, COMMON LAW, CONSTITUTIONAL PROVISION, RESPONDEAT SUPERIOR, AGENCY AND/OR ANY

3

*Osvatics*, the district court enforced a broadly worded arbitration agreement in Lyft's Terms of Service even though the plaintiff's claims regarding wrongful denial of paid sick leave were related to her employment contract and were collateral, at most, to her agreement to the Terms of Service in the app. *See* 535 F. Supp. 3d 1 (D.D.C. 2021).

Third, and most recently, in *Abadi v. Nat'l R.R. Passenger Corp.*, No. 1:22-cv-03684, 2024 U.S. Dist. LEXIS 57077 (D.D.C. Mar. 29, 2024), the plaintiff agreed to the Terms and Conditions of an Amtrak agreement when a friend purchased the ticket on his behalf. The agreement purported to encompass any disputes between the passenger and Amtrak and contained no language limiting the application of the arbitration provision to those disputes arising out of the particular trip or ticket purchase.  Although the district court remanded for an evidentiary hearing on disputed issues of fact relevant to unconscionability, the Court swiftly rejected the plaintiff's argument that the agreement was unconscionable because it "binds him for a 'lifetime'" by requiring arbitration of any past, present, or future disputes between the parties. *Id.* at *11. The Court held, "Though the contract may bind Abadi for a 'lifetime' by requiring that he arbitrate all 'past, present, or future' claims, this requirement applies with equal force to Amtrak." *Id.* at *12. Thus, even faced with an arbitration clause that lacked any temporal limitation on the universe of conceivable claims, the district court refused to accept the argument that the challenged clause was *per se* unenforceable because of its supposedly infinite application.

The overwhelming weight of decisions by this Court, and by other jurisdictions, show that the arbitration agreement contained in the Terms and Conditions at issue in this case are

---

OTHER LEGAL OR EQUITABLE THEORY), WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THIS AGREEMENT, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION."

enforceable, and this matter must be dismissed as Plaintiffs' claims are subject to binding arbitration.

**II.     Plaintiffs' arguments that the FAA does not apply mistake the issues and asks this Court to adopt patently unreasonable interpretations of the contract.**

Plaintiffs' argument that the FAA does not apply in this case conflates the related but distinct issues of validity and scope. Specifically, Plaintiffs argue that the FAA does not apply because the dispute here does not "aris[e] out of" Uber's Terms of Use. *See* Plaintiffs' Opposition p. 10-11. But any analysis of whether a particular claim "aris[es] out of" a transaction or contract containing an arbitration clause logically and necessarily presupposes the existence of an otherwise-valid agreement. Plaintiffs' argument, therefore, implicates only a question of scope, not validity. This distinction is significant because of the policy in favor of arbitration that attaches once there is a finding of a valid arbitration agreement. "[T]he presumption in favor of arbitration applies to the resolution of scope questions." *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir. 2006). Any dispute, therefore, as to whether the Plaintiffs' claims "aris[e] out of" Uber's Terms of Use should be resolved in favor of arbitrability. *See, e.g.*, *D.C. Pub. Empl. Rels. Bd. v. FOP/Metropolitan Police Dep't Labor Comm.*, 987 A.2d 1205, 1209 (D.C. 2010) (discussing the District of Columbia's "clear policy in favor of enforcing arbitration agreements").

Further, in both *Doucette* and *Osvatics*, the Courts compelled arbitration under the FAA for disputes that did not specifically involve a dispute over the meaning of the Terms and Conditions/Terms of Use. *Doucette* is particularly instructive because it dealt with arbitration of a personal injury action arising out of a rider's usage of an app. *Doucette*, at 341. At no point did the Court in *Doucette* exhibit any concern over whether it possessed the authority to compel arbitration of the plaintiff's negligence action under § 2 of the FAA. *Id*. To the contrary, the Court upheld the lower court's order granting the motion to compel and found that the agreement was not

5

unconscionable. *Id.* at 344. Plaintiffs have misconstrued not only the law in this regard, but also its application to the facts at bar. Namely, the ride in question in the present case is precisely the type of service and use of the Uber platform that the parties would anticipate to be governed by the Terms of Use and, thus, subject to § 2. The present case, just like *Doucette*, involves a tort action directly related to an injury the plaintiff sustained while using the app—when such usage was expressly conditional upon the riders' agreement to the Terms of Use/Terms of Service.

In an analogous case involving injuries sustained by a passenger who requested a ride through the Lyft app and sustained injuries in an accident, one court remarked, "There is no question that the arbitration provision covers the present dispute; it is broadly worded to include 'any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to' rideshare services. That is what the present lawsuit involves." *Pepper v. Kunal Tailor & Lyft, Inc.*, No. 23 C 1546, 2023 U.S. Dist. LEXIS 169777, *8 (N.D. Ill. Sept. 25, 2023). So too, in this case, Uber's December 2021 Terms of Use stipulate that "you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to . . . (ii) your access to or use of the Services at any time, [or] (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services . . . will be settled by binding arbitration between you and Uber, and not in a court of law." Consequently, any dispute, claim or controversy related to personal injuries sustained while riding as a passenger in a ride requested through the Uber App clearly constitutes a claim "arising out of" the Terms of Use for purposes of § 2.

In sum, the Plaintiffs' have misconstrued the issue of scope and validity. The injuries alleged in their Complaint arise out of the services contemplated in the Terms and Conditions, and accordingly Defendants' Motion must be granted.

### III.     The United States Supreme Court ruled on multiple occasions that delegation clauses such as the one at bar are valid and enforceable.

The delegation provision in Uber's Terms of Use is an arbitration agreement unto itself for purposes of the FAA and is thus enforceable. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 77 (2010). "That is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* (emphasis in original). Consequently, as noted in the original Motion to Compel, the U.S. Supreme Court has held that "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

Under *Schein*, issues of arbitrability must be delegated to the arbitrator by the terms of the agreement. The United States Supreme Court consistently holds "that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc.,* 139 S. Ct. at 530 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U. S., 938, 944 (1995)). Here, the express delegation clause in Uber's December 2021 Terms of Use constitutes exactly the type of clear and unmistakable expression of intent that would satisfy this standard, which should end the inquiry – "An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel." *See* Exhibit 2C to Defendants' Motion at Section 4.

Plaintiffs confuse the validity of delegation clauses generally with a separate but related line of cases that looks to whether the party is challenging the validity of the arbitration clause specifically or the validity of the entire agreement. *See Rent-A-Center*, 561 U.S. at 80. "If the claim

7

is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it," but if the claim is "fraud in the inducement of the contract generally," then it goes to the arbitrator to resolve. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967); *see also Rent-A-Center*, 561 U.S. at 80. There is no allegation of fraud or fraudulent inducement in this matter in the present case, but Plaintiffs attempt to rely on this second line of cases to circumvent the delegation clause and have the Court – rather than the arbitrator – determine the threshold issues of scope and arbitrability. But the *Prima Paint* rule, properly framed, is simply a restatement of the well-accepted rule that a court must play the gatekeeping function of determining whether a valid arbitration agreement exists in the first instance. Once the court determines: (1) that such an agreement exists, and (2) that such an agreement clearly and unmistakably expresses an intent to delegate threshold arbitrability questions to the arbitrator, the judicial function is complete. Synthesizing these rules, the Supreme Court unanimously held: "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530.

Allowing Plaintiffs to obtain judicial review of threshold issues that have been expressly delegated to an arbitrator would circumvent the FAA's express command that arbitration agreements "shall be valid, irrevocable, and enforceable," by ignoring the import of the delegation provision, which is its own arbitration agreement for purposes of § 2. Further, it allows a party to unilaterally disavow its own promise to have an arbitrator resolve the exact questions contemplated by the delegation clause. Doing so would run afoul of the well-accepted principle that arbitration agreements are governed by principles of contract interpretation, as well as the Supreme Court's related command that "courts must 'rigorously enforce' arbitration agreements according to their

8

terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013) (quoting *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 221 (1985)).

**IV.    Plaintiffs' argument that the agreement did not put them on inquiry notice is contrary to numerous Courts' findings regarding the enforceability of similar clickwrap agreements.**

Plaintiffs selectively cite to portions of the language from the in-app notification in an effort to defray their failure to read the terms before being bound by them.   Yet Plaintiffs selectively choose to ignore the language in those portions of the notification that were in the largest, bold font.



As addressed in Defendants' Motion, Plaintiffs were presented, within the Uber App, with an in-app blocking pop-up screen with the header "We've updated our terms." (Ex. 2, ¶7). It also stated in large type, **"We encourage you to read our Updated Terms in full"** and under that message the phrases "Terms of Use" and "Privacy Notice" were displayed, in text that was both bright blue

9

and underlined, which not only set the text apart from other text on the screen, but also indicated that they were hyperlinks. When a user clicked one of the hyperlinks, either the *Terms of Use* or Privacy Notice, respectively, were displayed. *Id.* The in-app blocking pop-up screen expressly stated that **"By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice."**

In *Osvatics*, then-Judge Jackson held: "Lyft's method of obtaining drivers' assent to its Terms of Service—presenting the terms of the agreement and requiring users to click 'I agree' before they can access the service—constitutes a valid means of offer and acceptance." *Osvatics*, 535 F. Supp. 3d at 11. Similarly, in *Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46, 55-56 (D.D.C. 2022), the court held, "Like the plaintiffs in *Seldon* and *Forrest*, Plaintiff is bound by an electronic agreement reasonably communicated to him, regardless of whether he actually read it," noting also that "[n]umerous other judicial decisions have concluded that clickwrap and similar electronic agreements are enforceable." *See Id.* n.3 (collecting cases). Plaintiffs ask that this court should disregard District of Columbia law entirely and look to New York, Massachusetts, and New Jersey, applying the law of those jurisdictions instead. But the weight of caselaw from this jurisdiction shows that providing a hyperlink to the terms and conditions in an in-app, pop-up notification is sufficient to put a reasonably prudent user on inquiry notice of the terms. *See Gambo*, at 54, and *Selden*, at 157. That is exactly what occurred in this case, and by Plaintiffs' own admissions, they simply chose not to read the terms. *See* Affidavits of Jesus M. Christian, ECF 21-2, p. 2 and Camila Selman, 21-4, p. 2. As espoused by the Court in *Gambo*, Plaintiffs are bound by the terms regardless of whether they read them. Accordingly, Defendants' Motion must be granted.

**V.     This Court and the District of Columbia Court of Appeals both recently ruled that nearly identical arbitration clauses were not unconscionable and were enforceable**.

Plaintiffs' citations to the case law other jurisdictions is especially unavailing as this Court and the Courts of the District of Columbia have recently enforced arbitration agreements of identical scope and language. In the recent case of *Doucette v. Neutron Holdings, Inc.*, 288 A.3d 339 (D.C. 2023),[3] the D.C. Court of Appeals upheld an arbitration clause with substantially similar terms to that of the one at issue as not being unconscionable. In that case, the Plaintiff reserved a Lime electric scooter through the defendant's application and sustained injuries while riding the Lime Scooter due to an accident that she alleged was the result of the defendant's negligence.

The Arbitration Agreement is bilateral and contains significant safeguards for users such as Plaintiffs. The Arbitration Agreement protects users from incurring prohibitive travel expenses by agreeing that arbitration proceedings "will be conducted in the county" where the user resides; and specifies that Uber will pay any administrative costs and arbitrators fees, and plaintiffs will only be responsible for costs up to the amount they would have been obligated to pay if the claim were filed in court. *See* Exhibit 2C, Section H to Defendant's Motion.

**VI.    Courts have repeatedly held that guest riders – regardless of whether they even have an account with Uber – are bound by the arbitration agreement.**

Ms. Selman may not avoid her obligations under the Terms and Conditions merely because she was not the individual that submitted the ride request. As addressed in Defendants' Motion and the instant Reply, Ms. Selman contracted with Uber and is bound by the Terms and Conditions, as she was availing herself of the services contemplated in the agreement at the time of her injuries. Further, as also addressed in Defendants' Motion under D.C. and federal law, "A nonsignatory to

---

[3] Neutron Holdings, Inc. does business as Lime, a company that provides a mobile phone application to consumers that they can use to reserve an electric scooter to travel in D.C. and other cities around the country.

an arbitration agreement may be bound by that agreement under traditional principles of contract and agency law." *Oehme, van Sweden & Associates, Inc. v. Maypaul Trading & Servs., LTD.*, 902 F. Supp. 2d 87, 97 (D.D.C. 2012) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). "The theories for binding nonsignatories to arbitration agreements include incorporation by reference, assumption, agency, veil piercing/alter ego, estoppel, and third-party beneficiary." *Id.*

In order to find that a putative plaintiff is a third-party beneficiary to whom an arbitration clause may be applied, "the Court must apply the legal standard for third-party beneficiary status and determine whether 'the contracting parties had an express or implied intention to benefit directly the party claiming such status.'" *Mariano v. Gharai*, 999 F. Supp. 2d 167, 173 (D.D.C. 2013) (quoting *Fort Lincoln Civic Assoc., Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008)). Here, Uber's December 2021 Terms of Use provide that the arbitration agreement "shall be binding upon, and shall include any claims brought by *or against* any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services." (Emphasis added). It further provides, "To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement." The arbitration agreement, by its express and unambiguous terms, objectively manifests the Parties' intent to bind third parties—including heirs—to the agreement. Crucially, the arbitration clause includes claims brought by or against any third parties, including heirs. Therefore, the contracting parties unmistakably manifested "an express or implied intention to benefit directly the party claiming [third-party beneficiary] status," *Mariano*, 999 F. Supp. 2d at 173, because the arbitration agreement could be enforced *against Uber* if it were to flout the third-party provision and attempt

to sue an identified third-party beneficiary, such as Mr. Christian's heirs. In addition, any concern about the "identifiability" of potential beneficiaries or the ability to ascertain third-party beneficiary status should be allayed by the specific reference to Mr. Christian's "heirs"—a limited class of people who were defined, either by will or by the laws of intestacy, at the time the parties entered into the arbitration agreement. Thus, because the language of the arbitration agreement clearly and unambiguously manifests an intent to benefit Mr. Christian's heirs (to the extent any claims could have otherwise been brought against them in a court of law), the arbitration agreement should likewise bind any of Mr. Christian's heirs to the extent they seek to assert a claim against Uber arising out of Mr. Christian's use of the app. Accordingly, all Plaintiffs' claims are subject to the arbitration agreement.

**VII.  Because Plaintiffs' claims against Defendants are subject to arbitration, their suit against the remaining parties, or on any remaining claims against Defendants, must be stayed pending conclusion of the arbitration.**

The FAA provides that, where certain claims or defendants are not subject to a binding arbitration clause, and upon application of one of the parties, the Court "**shall**" issue a stay of proceedings on those issues pending resolution of all claims subject to arbitration. *See* 9 U.S.C. § 3; *see also Choice Hotels Int., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 712 (4th Cir. 2001); *see also Gambo*, 642 F. Supp. 3d at 55. Accordingly, while Defendants aver dismissal of all claims against them should be dismissed with prejudice, to the extent any claims remain and the case remains pending against the Co-Defendants in this matter, the case should be stayed.

## CONCLUSION

In summary, Plaintiffs agreed in the parties' App-based contract to arbitrate the claims asserted here, as set forth in the Terms of Use.  Plaintiff's personal injury claim falls within the scope of the valid, enforceable, and binding Arbitration Agreement because they arise out of and

relate to her use of the Uber App. Courts nationwide that have considered app- or internet- based agreements, including Uber's arbitration agreements, have compelled arbitration.

For the foregoing reasons, and those stated in accompanying Memorandum in Support as well as those which may be made at argument before this Honorable Court, Uber and Rasier respectfully move this Honorable Court to grant its Motion to Compel Arbitration, and to dismiss this matter or stay the action pending completion of arbitration.

Dated: May 10, 2024                    Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER LLP**

/s/ Peter M. Moore_____
Peter M. Moore, Esq. (Fed Bar No.: 985713)
Timothy S. Carey, Esq. (Admitted Pro Hac Vice)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102-5102
Tel.: 703-245-9300
Fax: 703-245-9301
peter.moore@wilsonelser.com
timothy.carey@wilsonelser.com
*Counsel for Uber Technologies, Inc. and Rasier, LLC*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was sent via ECF and by electronic mail this 10th day of May, 2024 to:

Robert F. Muse, Esq.
Juliana M. Andonian, Esq.
Ronald Kovner, Esq.
Levy Firestone Muse, LLP
900 17th St. NW
Washington, DC 20006
rmuse@levyfirestone.com
jandonian@levyfirestone.com

*/s/ Peter M. Moore*
 Peter M. Moore, Esq.

15