**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JESUS M. CHRISTIAN, et al.,** : | |
| : | |
| **Plaintiffs** : | |
| : | |
| **v.** : | **CASE NO. 24-cv-304** |
| : | |
| : | |
| **UBER TECHNOLOGIES, INC. et al.,** : | |
| : | |
| **Defendants.** : | |

## PLAINTIFFS' SURREPLY TO UBER'S MOTION TO COMPEL ARBITRATION

For the first time in its Reply, Uber argues that Plaintiffs should be forced to arbitrate their claims (1) pursuant to D.C. law, Uber Reply at 2–8, and (2) due to their status as "third-party beneficiaries" of the agreement purportedly signed by decedent Carlos Christian. Uber's Reply at 11–13. In making these arguments, Uber misstates D.C. law regarding arbitration and third-party beneficiaries. First, the D.C. Code provides no grounds for enforcing an arbitration agreement that, like Uber's, is unenforceable under federal law. Second, neither Plaintiff is identified as a beneficiary in the agreement or stands to "benefit" from it. Uber wrongly assumes that Jesus Christian brings his Wrongful Death Act claims on behalf of decedent's "heirs" when, in fact, he brings that claim on behalf of himself and his wife as the beneficiaries designated by D.C.'s Wrongful Death Act. Finally, even with these new arguments, Uber fails to carry its burden and the Court should deny its motion.

## I. D.C. Law Provides No Basis For Enforcing Uber's Infinite Arbitration Clause.

Uber's Motion invoked one ground on which it said the Court should enforce its arbitration provision: the Federal Arbitration Act (FAA). Uber Mem. at 7–8 (Legal Standard), 9–10. After

resting its entire opening brief on this federal statute, Uber's Reply now argues, for the first time, that the Court should look to D.C. law to enforce its arbitration agreement. This novel argument fails because D.C. law does not support the enforcement of the arbitration provision at issue here.

### A. The D.C. Code does not allow enforcement of arbitration agreements that are not enforceable under the FAA.

Conspicuously for a party supposedly arguing under D.C. law, Uber never once cites or even mentions the D.C. Code. The D.C. Code includes a state-law equivalent of the FAA, codified in Title 16, Chapter 44—but it does not help Uber. The law dictates that "[a] provision for mandatory binding arbitration within a consumer arbitration agreement is void and unenforceable except to the extent federal law provides for its enforceability." D.C. Code § 16-4403(d).[1] This means that if Uber cannot enforce its arbitration provision under federal law, D.C. state law can provide no help as a fallback alternative (even if it had been invoked in a timely manner).

As part of its pivot to D.C. law, Uber tries to shore up "the extent to which federal law provides for . . . enforceability" by arguing in its Reply that Plaintiffs have conflated the issues of an agreement's validity and scope. This is incorrect. Plaintiffs' argument concerned the scope of the *FAA*, not the scope of the arbitration provision. The case of *Kritian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), quoted by Uber, has no relevance to this issue. It concerns the scope of an arbitration agreement. *Id.* at 35. The "presumption in favor of arbitration" referenced in *Kritian* is an aspect of *federal* pro-arbitration policy embodied in the FAA. It only applies where the FAA does. The "policy" referenced in *D.C. Public Employees Relations Board v. Fraternal Order of Police*, 987 A.2d 1205, 1209 (D.C. 2010), is grounded in D.C. law, but cannot extend beyond the

---

[1] A "consumer arbitration agreement" is defined as "a standardized contract, written by one party, with a provision requiring that disputes arising after the contract's signing shall be submitted to binding arbitration, and the other party is a consumer." D.C. Code § 16-4401(4).

limits set by the D.C. Code.[2] When it comes to Uber's arbitration clause, the FAA does not apply

and "federal law" does not "provide[] for its enforceability." D.C. Code § 16-4403(d). Under D.C.

Code § 16-4403(d), therefore, D.C. law does not provide for its enforceability either.

### B. The D.C. cases that Uber cites are not relevant comparators here.

The D.C. cases Uber cites are not to the contrary and are easily distinguished. In *Doucette v.*

*Neutron Holdings*, 288 A.3d 339 (D.C. 2023), in *Abadi v. National Railroad Passenger Corp.*, No.

1:22-cv-03684, 2024 WL 1344403 (D.D.C. Mar. 29, 2024), and in *Osvatics v. Lyft, Inc.*, 535 F.

Supp. 3d 1 (D.D.C. 2021), the FAA *applied,* and the agreement at issue was enforced pursuant to

it. None involved consideration of D.C. law separate from the FAA and federal pro-arbitration

policies. In *Doucette*, and in *Abadi*, the parties did not dispute and the courts did not consider

whether federal law (the FAA) provided a potential basis for enforcement. That is not the case

here. *Osvatics* affirmatively supports Plaintiffs' view that the scope of the FAA is a threshold

question that must be resolved before a consumer arbitration agreement can be enforced under

federal or D.C. law. There, then-Judge Jackson spent considerable time evaluating whether the

FAA applied to the arbitration agreements at issue. *Osvatics*, 535 F. Supp. 3d at 12 (calling this

"[t]he most substantial issue" presented by the motion). In *Osvatics* the issue was whether the

agreements were within the scope of the limitations established by § 1 of the FAA, not § 2. *See id.*

Under D.C. Code § 16-4403(d), this is a threshold question which must be evaluated by the Court

before any agreement can be enforced pursuant to D.C. law. *See id.* at 22 ("[T]hat agreement is

enforceable under the FAA because it is not exempt under section 1.").

---

[2] *D.C. Public Employees* is also inapposite in that it references the D.C. Uniform Arbitration Act which, even in 2010, was out of date. *See D.C. Public Employees*, 987 A.2d at 1209. As explained in *Menna v. Plymouth Rock Assurance Corp.*, 987 A.2d 458, 462–63 (D.C. 2010), it was replaced by the still-in-force Revised Uniform Arbitration Act. The D.C. Uniform Arbitration Act has not been in force in the District since July 1, 2009.

## II.  Uber Has Not Established As A Matter of Law That Either Plaintiff Can Be Compelled to Arbitrate As A Third-Party Beneficiary.

Uber advances a second new argument in its Reply: that while neither Plaintiff was a signatory to the Terms of the Uber account in use at the time of the fatal collision, each is nevertheless bound to arbitrate as a third-party beneficiary of those Terms.[3] But Uber has not met its burden to demonstrate that the supposedly contracting parties, i.e., Uber and Carlos Christian,[4] intended to directly benefit either Plaintiff through the Uber Terms. The Terms do not confer any benefit on either Plaintiff—indeed, the "benefit" Uber identifies is illusory and illogical. The Terms fail to define "third-party beneficiary" or to identify either Plaintiff as one, and the term "heirs" does not include Jesus Christian as plaintiff in a Wrongful Death Act claim. In addition, fact issues remain as to whether either Plaintiff is, in fact, a third-party beneficiary against whom Uber can assert the arbitration agreement with Carlos. The presence of fact issues means that Uber, as "the party seeking . . . arbitration," has failed to meet its burden to "demonstrate[e] the absence of a genuine dispute of material fact." *Mariano v. Gharai*, 999 F. Supp. 2d 167, 171 (D.D.C. 2013) (quoting *Kindig v. Whole Foods Mkt Group, Inc.,* 811 F.Supp.2d 410, 413 (D.D.C. 2011)).

### A.  Neither Jesus Christian nor Camila Selman "clearly stood to benefit" from Uber's Terms, as (supposedly) agreed to by Carlos Christian.

Uber concedes that it has the burden of demonstrating that "the contracting parties had an express or implied intention to benefit directly the party claiming such status." Uber's Reply at 12 (citing *Mariano,* 999 F. Supp. 2d at 173). Uber cannot meet this burden without establishing (1) that Camila Selman and Carlos Christian "clearly stood to benefit" from the contract—here, Uber's supposed clickwrap agreement with Carlos—and (2) that their "involvement [was] plainly

---

[3] Uber lists other theories for binding non-signatories, Reply at 12, but does not argue that any applies.
[4] Uber failed to prove that Carlos Christian or either Plaintiff agreed to Uber's Terms of Use and its arbitration clause, Opp'n at 19-32, but, for the limited purpose of addressing Uber's third-party beneficiary argument in this memorandum, Plaintiffs will treat Carlos as a "contracting party."

ascertainable from the four corners of the contract." *Sakyi v. Estee Lauder Companies, Inc*., 308 F. Supp. 3d 366, 383–84 (D.D.C. 2018) (citing *Kelleher v. Dream Catcher, L.L.C*., 278 F. Supp. 3d 221, 224 (D.D.C. 2017)). Uber fails on both counts. The supposed Agreement between Carlos and Uber concerned Carlos's use of the Uber Services, and there is no plausible argument that Carlos and Uber had in mind that the Terms would benefit Camila or Jesus.

The sole "benefit" to Plaintiffs that Uber relies on in making this argument is no benefit at all. Uber claims the Plaintiffs benefit because "the arbitration agreement could be enforced against Uber if it were to flout the third-party provision and attempt to sue an identified third-party beneficiary, such as Mr. Christian's heirs." Uber Reply, at 12–13. This purported "benefit"— compelled arbitration—is the very burden that Plaintiffs resist here. Moreover, the likelihood that Uber would sue Carlos Christian's "heirs," or Jesus Christian, or Camila Selman, none of whom are identified in the contract, is, as Uber certainly knows, virtually non-existent, making the "right" to invoke an arbitration clause a fiction, or illusory at best. Not surprisingly, Uber provides no plausible scenario in which it would sue the Christians or Ms. Selman. It cannot reasonably be said that Plaintiffs "stood to benefit" in *any* sense, let alone "clearly," from the contract.

Even if the right to demand arbitration could be considered a benefit, neither Plaintiff has accepted that "benefit" or sought any benefit from Carlos's supposed agreement with Uber. *See, e.g.*, *Jacks v. CMH Homes, Inc*., 856 F.3d 1301, 1305 (10th Cir. 2017) ("The 'benefit,' according to Defendants, is the right to compel arbitration. But Defendants have not cited authority . . . that says a contract (here, the arbitration agreement) can be enforced against an intended third-party beneficiary who has not accepted the benefit . . . or otherwise sought to enforce the terms of the contract."); Restatement (Second) of Contracts § 306 (1981) (:A beneficiary who has not previously assented to the promise for his benefit may in a reasonable time after learning of its

existence and terms render any duty to himself inoperative from the beginning by disclaimer"). A rule binding non-parties without enabling them to reject a benefit "would make no sense: unwitting third parties could be bound to a contract without knowing its terms or ever realizing some benefit." *Jacks*, 856 F.3d at 1305.

Uber's argument also fails because the purported arbitration agreement fails to name or identify Jesus Christian or Camila Selman as an intended beneficiary and otherwise fails to identify or define any "third party beneficiaries" *See Sakyi*, 308 F. Supp. 3d at 383–84 (quoting *Kelleher*, 278 F.Supp.3d at 224 (When the purported third party's name is absent from the contract, the record must provide evidence that the party's identity was "ascertainable from either the terms of the contract or the circumstances surrounding its creation"). Uber's argument that Carlos's "heirs" were ascertainable at the time Carlos agreed to the arbitration clause misses the point. Jesus Christian did not bring his claim under the D.C. Wrongful Death Act as an heir to the Carlos Christian estate, or on behalf of heirs to the estate. Rather, as explained at length in Plaintiffs' Opposition at 15–17, Plaintiff Jesus Christian brings the Wrongful Death action on his and Noelia Christian's behalf as the beneficiaries specified by a District of Columbia statute creating an independent right of action on their behalf. So even if some unnamed "heirs" were intended beneficiaries, which they are not, that term would not include Jesus Christian in this case.

Moreover, Carlos's "heirs," i.e., those who would be entitled to inherit from his estate, were *not* ascertainable at the time he clicked a box and purportedly agreed to an arbitration clause. That is simply because the identity of heirs is not ascertainable until death, as, for example, there could be a subsequent will or codicil and/or death of an immediate or extended family member. And a later change of domicile could result in a different statutory designation and method of ascertaining "heirs." *See Costello v. Costello*, 149 F.2d 379, 380 (D.C. Cir. 1945) (noting "the

general rule of construction to be that a devise to 'heirs at law' of a testator will ordinarily be construed as referring to those who are such *at the time of the testator's death*") (emphasis added).[5]

**B.  Unresolved factual issues preclude the Court from determining, as a matter of law, that Plaintiffs were third-party beneficiaries.**

At a minimum, issues of fact remain as to whether either Plaintiff is a third-party beneficiary of Carlos's purported agreement to arbitrate. Specifically, the intent and expectations of the supposed contracting parties remain unresolved and are determinative with respect to third-party beneficiary status. A court can compel arbitration only "if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cruz v. Jimenez Constr. LLC*, No. 20-cv-1978, 2023 WL 3040443, at*2 (D.D.C. Apr. 21, 2023) (internal citations omitted). Consequently, Uber has failed to meet its burden, *Mariano*, 999 F. Supp. 2d at 171, and to the extent Uber's Motion to Compel relies on a third-party beneficiary argument, it must be denied. *Id*.

## CONCLUSION

Uber has not met its burden to prove an enforceable Agreement to Arbitrate the claims in this case and its Motion to Compel should be denied, for the reasons stated in Plaintiffs' Opposition and in this Surreply.

Dated:      May 24, 2024                          Respectfully Submitted,

                                                    /s/ Robert F. Muse
                                                   Robert F. Muse (D.C. Bar No. 166868)
                                                   Juliana M. Andonian (D.C. Bar No. 90006115)
                                                   Ronald Kovner (D.C. Bar No. 166124)
                                                   Kevin P. Crenny (D.C. Bar No. 1765044)
                                                   **LEVY FIRESTONE MUSE LLP**

---

[5] When Uber argues, wrongly, that the identity of "heirs" *at the time the parties entered into an arbitration agreement* can be determined by will or statute, Uber Reply, at 13 (emphasis added), it serves only to highlight the absence of any provision or method of identifying Plaintiff Camila Selman (or anyone else) as within the vague "third-party beneficiaries" category at the time the parties entered into an arbitration agreement.

900 17th St. NW, Suite 1200
Washington, DC 20006
Tel: (202) 845-3215
Fax: (202) 595-8253
rmuse@levyfirestone.com
jandonian@levyfirestone.com
rk@levyfirestone.com
kcrenny@levyfirestone.com

*Counsel for Plaintiffs*