**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| JESUS M. CHRISTIAN, *et al.*, |
| Plaintiffs, |
| v. |
| UBER TECHNOLOGIES, INC., *et al.*, |
| Defendants. |

Civil Action No. 24-00304 (EGS)

**MEMORANDUM OPINION**

Plaintiffs Jesus M. Christian ("Mr. Christan"), in his
individual capacity and as the personal representative of the
estate of his son, Carlos Enrique Christian Rey ("Mr. Rey"), and
Camila Alexia Selman Troncoso ("Ms. Troncoso"), bring this
action against Defendants seeking damages for personal injuries
stemming from a car collision during an Uber ride. Compl., ECF
No. 1 at 1–2.[1] Uber Technologies, Inc. and Rasier, LLC, a wholly
owned subsidiary of Uber Technologies, Inc. (together, "Uber"),
seek to compel arbitration pursuant to Uber's Terms of Use. *See*
Uber's Mot. to Compel Arbitration and Dismiss, ECF No. 18.

---

[1] When citing electronic filings throughout this opinion, the
Court cites to the ECF header page number, not the original page
number of the filed document.

Pending before the Court is Uber's Motion to Compel Arbitration and Dismiss. *See id.*[2] Upon careful consideration of the motion, the responses and replies thereto, applicable law, the entire record, and for the reasons explained below, the Court **GRANTS** Uber's Motion to Compel Arbitration, ECF No. 18; **DENIES** Uber's Motion to Dismiss, ECF No. 18; and **STAYS** proceedings pending the outcome of arbitration.

## I.    Background

Uber "develops proprietary technology to develop and maintain digital multi-sided platforms." Uber's Mem. in Support of Mot. to Compel Arbitration and Dismiss ("Uber's Mot."), ECF No. 18-1 at 2. Relevant here, Uber's ride-sharing platform allows individuals needing a ride ("Riders") to connect with individuals willing to provide transportation services ("Drivers") through the respective Uber Apps. *Id.* at 2–3.

Mr. Christian, Ms. Troncoso, and Mr. Rey each created separate Uber Rider accounts between January and October of 2016. *See* Uber Rep. for Carlos Christian, ECF No. 18-5; Uber

---

[2] Also pending before the Court is Plaintiffs' Motion for Leave to File a Surreply. *See* Pls.' Mot. for Leave to File Surreply, ECF No. 24; Pls.' Mem. in Support of Mot. for Leave to File Surreply, ECF No. 24-1. The authorities cited by Plaintiffs, and allegedly raised by Uber for the first time in its Reply, have no bearing on the Court's conclusions that a contract formed between Plaintiffs and Uber and that the Arbitration Agreement contains a valid Delegation Clause. Accordingly, the Court **DENIES** Plaintiffs' Motion for a Surreply.

Rep. for Camila Selman, ECF No. 18-7; Uber Rep. for Jesus
Christian, ECF No. 18-8. In February and March 2022, upon
opening their Uber Apps, Mr. Christian, Mr. Rey, and Ms.
Troncoso were presented with an in-app blocking pop-up screen
with the header "We've updated our terms." Aff. of Alejandra
O'Connor ("O'Connor Aff."), ECF No. 18-3 ¶¶ 9, 13. The pop-up
encouraged users to read the updated, linked terms dated
December 16, 2021, and required the user to check a box and
click "confirm" before using the Uber app. *Id.* ¶ 10; *see also*
Updated Terms Pop-Up Screen ("Pop-Up Screen"), ECF No. 18-4. The
notice confirmed the user was eighteen years of age and stated:
"By checking the box, I have reviewed and agreed to the Terms of
Use and acknowledge the Privacy Notice." O'Connor Aff., ECF No.
18-3 ¶ 11. Mr. Rey, Ms. Troncoso, and Mr. Christian each checked
the box and clicked "confirm" on February 12, 2022; February 15,
2022; and March 31, 2022, respectively. *Id.* ¶¶ 13, 15, 21.

The December 16, 2021 Terms included an arbitration
agreement (the "Arbitration Agreement"), which stated:

> [Y]ou and Uber agree that any dispute, claim,
> or controversy in any way arising out of or
> relating to (i) these Terms and prior versions
> of these Terms, or the existence, breach,
> termination, enforcement, interpretation,
> scope, waiver, or validity thereof; (ii) your
> access to or use of the Services at any time;
> (iii) incidents or accidents resulting in
> personal injury to you or anyone else that you
> allege occurred in connection with your use of
> the Services (including, but not limited to,

> your use of the Uber Marketplace Platform or
> the driver version of the Uber App),
> regardless whether the dispute, claim, or
> controversy occurred or accrued before or
> after the date you agreed to the Terms, and
> regardless whether you allege that the
> personal injury was experienced by you or
> anyone else; and (iv) your relationship with
> Uber, will be settled by binding individual
> arbitration between you and Uber, and not in
> a court of law. This Arbitration Agreement
> survives after your relationship with Uber
> ends.

Ubers Terms of Use Modified on Dec. 16, 2021 ("Dec. 2021 Terms of Use"), ECF No. 18-6 at 3–4.

The Terms also included a Delegation Clause, which stated, in part:

> Only an arbitrator, and not any federal,
> state, or local court or agency, shall have
> exclusive authority to resolve any dispute
> arising out of or relating to the
> interpretation, applicability,
> enforceability, or formation of this
> Arbitration Agreement, including without
> limitation any claim that all or any part of
> this Arbitration Agreement is void or
> voidable. An arbitrator shall also have
> exclusive authority to resolve all threshold
> arbitrability issues, including issues
> relating to whether the Terms are applicable,
> unconscionable, or illusory and any defense to
> arbitration, including without limitation
> waiver, delay, laches, or estoppel.

*Id.* at 6.

On January 15, 2023, Mr. Rey requested a ride through his Uber App to take him and his long-term girlfriend, Ms. Troncoso, to Georgetown for an art exhibit. *See* Compl., ECF No. 1 ¶ 53.

4

Through Uber's Driver App, Defendant Khalinmandakh Ichinkhorol ("Mr. Ichinkhorol") was connected with Mr. Rey to complete his ride request. *Id.* ¶ 54. During the trip, Mr. Rey and Ms. Troncoso sat in the back seat wearing their seatbelts. *Id.* Mr. Ichinkhorol's route required him to make a left turn at the intersection of 15th Street, N.W. and Massachusetts Avenue, N.W. *Id.* ¶ 60. As Mr. Ichinkhorol moved into the intersection to make the left turn, Defendant Reinald Roland Johnson's ("Mr. Johnson") car approached the intersection, where he had a green light, requiring individuals making a left turn to yield to him and other oncoming traffic. *Id.* ¶¶ 62-66. Mr. Johnson's vehicle struck the Uber broadside, colliding directly with the passenger side of the car. *See id.* ¶ 66; Photographs of Ichinkhorol's vehicle, January 15, 2023 ("Pls.' Ex. D-6"), ECF No. 21-5 at 27-33. After being extracted from the vehicle and transported to George Washington University Hospital, Mr. Rey died from the injuries he sustained in the collision. Compl., ECF No. 1 ¶ 75. Ms. Troncoso suffered series physical injuries, "including four pelvic fractures, a displaced lumbar vertebra, a lung contusion, splenic hematoma, and concussion." *Id.* ¶ 77.[3]

---

[3] On June 30, 2023, Mr. Johnson pled guilty to involuntary manslaughter after his blood alcohol level was found to be above the legal limit at the time of the collision. *See* Compl., ECF No. 1 ¶ 68.

Plaintiffs now bring negligence claims along with claims under the Wrongful Death Act and Survival Act against Uber, Mr. Johnson, and Mr. Ichinkhorol. *Id.* at 19–23.

## I.   Legal Standard

A motion to compel arbitration is examined under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were "a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 136 (D.D.C. 2015) (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)) (internal quotation marks omitted). Under Rule 56(c), summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (quoting *Aliron Int'l*, 531 F.3d at 865) (internal quotation marks omitted). "The party seeking to compel arbitration must present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Id.* (quoting *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013)) (internal quotation marks omitted). "The burden then shifts to plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement." *Id.* (internal quotation marks omitted). "The Court will compel arbitration if the pleadings and the evidence

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

Under the Federal Arbitration Act ("FAA"), a contractual provision requiring arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA "places arbitration agreements on equal footing with other contracts . . . and requires courts to enforce them according to their terms[.]" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2019) (internal citations omitted). In addition to agreeing to arbitrate, parties may also "agree to have an arbitrator decide . . . 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein v. Archer*, 586 U.S. 63, 68 (2019) (quoting *Rent-A-Center*, 561 U.S. at 68-69) (internal quotation marks omitted).

## II.  Analysis

Uber seeks to compel arbitration pursuant to the FAA and the Arbitration Agreement contained in its Terms of Use. *See* Uber's Mot., ECF No. 18-1 at 9-11. Plaintiffs do not dispute that they checked the box indicating their review of, and agreement to, the Terms of Use containing the Arbitration Agreement and Delegation Clause, or that they further clicked

"Confirm." *See generally* Pls.' Opp., ECF No. 21. Rather, Plaintiffs challenge the Arbitration Agreement, including the Delegation Clause, in three ways. First, Plaintiffs contend the pop-up with Uber's updated terms did not put Plaintiffs on notice that clicking "Confirm" would "manifest assent to an agreement," and therefore, no contract was formed. *See id.* at 31-34. In the alternative, Plaintiffs argue that both the Arbitration Agreement and Delegation Clause are unenforceable because they are unconscionable and against public policy.[4] *Id.* at 27-31. Finally, Plaintiffs argue that even if there is an enforceable arbitration agreement, their claims are not arbitrable. *Id.* at 13-17. Before turning to the enforceability of the Arbitration Agreement or the question of arbitrability—including whether the Court is the proper forum to resolve those issues—the Court examines whether the in-app blocking pop-up screen formed a contract.

---

[4] Challenges to a contract's formation are distinguishable from challenges to the "validity" of a contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "While the former category concerns nonarbitral questions about whether an arbitration agreement was 'ever concluded,' the latter category encompasses questions about the revocation of contracts because of illegality, such as for fraud, duress, unconscionability or mutual mistake, which may be the subject of arbitration." *RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 139 (D.D.C. 2011) (citing *Buckeye*, 546 U.S. at 443, 444 n.1) (internal citations omitted).

## A. The Parties Formed an Agreement to Arbitrate

"[A]rbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986). Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Matters of contract formation are for the court to decide. *See Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 288 (2010) ("It is [ ] well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.") (collecting cases).[5] The parties do not dispute that District of Columbia ("D.C.") law governs the contract formation inquiry. *See* Dec. 2021 Terms of Use, ECF No. 18-6 (stating that the law of the state where an accident occurred governs disputes arising from the accident); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that courts apply ordinary state-law principles to formation questions). Under D.C. common law, a

---

[5] As the Court addresses later in this Opinion, the Delegation Clause within the Arbitration Agreement provides that an arbitrator shall resolve disputes regarding formation of a contract. *See* Dec. 2021 Terms of Use, ECF No. 18-6 at 6. However, the law is clear that formation issues are for the Court to decide.

contract forms when the parties "express[ ] an intent to be bound, agree[ ] to all material terms, and assume[ ] mutual obligations sufficient to create an enforceable contract." *Eastbanc, Inc. v. Georgetown Park Ass'ns II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008).

Uber has met its initial burden of establishing that a contract formed between the parties with respect to the arbitration provision. *See, e.g.*, *Gambo v. Lyft*, 642 F. Supp. 3d 46, 54–55 (D.D.C. 2022) (holding plaintiff had reasonable notice of the contract where he was presented with a clickwrap agreement providing a hyperlink to the relevant terms). Plaintiffs do not dispute that they agreed to and clicked "Confirm" on Uber's in-app Pop-Up Screen with the updated Terms of Use. *See generally* Pls.' Opp., ECF No. 21. Instead, Plaintiffs argue that the Pop-Up Screen is insufficient to establish mutual assent because it would not have put a reasonable person on notice that she was entering into a contract. *See id.* at 31–33. In response, Defendants present the Court with a plethora of cases where other courts have upheld "clickwrap" agreements such as the one at issue here.[6] *See* Uber's

---

[6] A clickwrap agreement is "an agreement 'in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available[.]'" *Gambo*, 642 F. Supp. 2d at 49–50 (quoting *Seldon v. Airbnb, Inc.*, No. 16-cv-00933, 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021)).

Reply in Support of Mot. to Compel Arbitration ("Uber's Reply"),
ECF No. 23 at 19 n.4.

Following in the footsteps of many other courts in this
Circuit, the Court agrees that Uber's pop-up screen provided a
reasonable person with notice that he was entering into a
contract. In *Selden v. Airbnb, Inc.*, the Court of Appeals for
the District of Columbia Circuit ("D.C. Circuit") held that
Airbnb's sign-up page put the plaintiff on inquiry notice that
by signing up for Airbnb he agreed to its terms of service. 4
F.4th at 156.[7] Examining the sign-up screen's design, the court
concluded that the red text against the white background "drew a
user's attention to the hyperlinked terms" and any reasonable
user would understand that he was agreeing to the terms by
signing up. *Id.* at 156–57. Going steps further than the notice
in *Selden*, Uber's pop-up screen makes it abundantly clear that
checking the box and clicking "Confirm" would manifest assent to
an agreement. Against a white backdrop, the page immediately
draws a user's eye to the statement: "We encourage you to read
our Updated Terms in full." *See* Pop-Up Screen, ECF No. 18-4.
Underneath, in a bright blue font, the pop-up includes
hyperlinks to the relevant documents. *Id.* Further, before users

---

[7] While the D.C. Circuit applied California state contract law,
D.C.'s common law on contracts does not differ in any material
way. *Gambo*, 642 F. Supp. 3d at 54. In *Gambo* this court applied
the D.C. Circuit's reasoning in *Seldon* to D.C. law. *Id.*

could access the app's features, they had to check a box next to
a statement notifying the user: "By checking the box, I have
reviewed and agree to the Terms of Use and acknowledge the
Privacy Notice." *Id.*; O'Connor Aff., ECF No. 18-3 ¶¶ 9, 15, 21.
Any reasonable user would understand that by checking the box
and clicking "Confirm," he was agreeing to those terms.

Plaintiffs attempt to distinguish their case by arguing
that Uber failed to establish that Plaintiffs signed any
agreements with Uber when they first created their accounts. *See*
Pls.' Opp., ECF No. 21 at 28–30. Thus, having no prior dealings
with Uber, the Court should consider "whether users *not already
in agreements with Uber* 'would have known the terms and the
conduct that would be required to assent to them.'" *Id.* at 30
(emphasis in original) (quoting *Selden*, 4 F.4th at 156). The
Court finds this argument unpersuasive. Even using the standard
articulated by Plaintiffs for users not already in agreements
with Uber, the pop-up screen's design and links are more than
sufficient to provide a reasonable user with notice that he was
entering into an agreement.

Finally, Plaintiffs argue that the pop-up screen is
"confusing" to users, asserting that Uber's intent of the pop-up
is unclear and "[t]he supposed contractual nature of the Terms
is hardly the most prominent information on the pop-up page."
*Id.* at 31–32. Plaintiffs contend that the fact that users could

click confirm without clicking on the terms "might lead some reasonable users to discount any weight they might have placed on this page," and therefore, would be unaware they were agreeing to arbitration. *Id.* at 32–33. The Court concludes that these characterizations of the pop-up are inaccurate, illogical, and unpersuasive. It is well established that "absent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not." *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010 (D.C. 2002). Here, regardless of whether Plaintiffs read the Terms of Use, they were on inquiry notice of the terms, including the Arbitration Agreement.

Accordingly, Plaintiffs have failed to establish any genuine dispute of material fact as to the formation of the Arbitration Agreement, and the Court concludes that a contract formed between the Plaintiffs and Uber when Plaintiffs checked the box on the pop-up and clicked confirm.

## B. The FAA Applies to Uber's Motion to Compel

Next, Plaintiffs argue that the FAA does not apply here for two related reasons. First, Plaintiffs' specific claims do not 'arise out of' Uber's Terms of Use, and section 2 of the FAA "expressly limit[s] [the FAA] to disputes 'arising from' the underlying contract." Pls.' Opp., ECF No. 21 at 17. Second, and more general, Plaintiffs contend that Uber's Arbitration

Agreement is an unenforceable "infinite arbitration clause," "plac[ing] the Agreement outside the scope of § 2." *Id.* at 35.[8] Both arguments posit that there is a limit to the Supreme Court's pro-arbitration canon of construction where the claims at issue do not arise out of the underlying contract. In response, Uber argues that this characterization conflates the issues of scope and validity, which is an important distinction because "the policy in favor of arbitration [ ] attaches once there is a finding of a valid agreement." Uber's Reply, ECF No. 23 at 5.

There is very little case law—and Plaintiffs point to none from the D.C. Circuit—on the FAA's "arising out of" requirement. *See Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1213 (11th Cir. 2021); David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633 (2020) (opining on the legal landscape of infinite arbitration clauses and the recent push back from lower courts). Focused on the statutory language of § 2, some courts have applied a state's arbitration rules rather than the FAA where the dispute did not have a sufficient "nexus" to the underlying contract. *See, e.g.*, *Calderon*, 5 F.4th at 1213; *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 723-24 (9th Cir. 2020)

---

[8] Given the Court's conclusion that the parties agreed to delegate questions of contract validity to an arbitrator, the Court does not address here whether the Arbitration Agreement is an unconscionable infinite arbitration clause.

(O'Scannlain, J., concurring) ("Functionally, the 'arising out of' language in § 2 appears to serve as a boundary to the types of controversies that are covered by the FAA . . . when the dispute is wholly unrelated to the contract, the FAA is silent; federal courts have no power to compel arbitration.").[9] For example, in *Calderon*, the Eleventh Circuit refused to apply the FAA—and the *Moses H. Cone* pro-arbitration canon—where the defendant, a rental car company, invoked an arbitration agreement between the plaintiff and a third-party website that plaintiff used to reserve a car. *Calderon*, 5 F.4th at 1207. Emphasizing that the lawsuit did not name the third-party as a defendant or identify any wrongdoing by the third-party, the court concluded that the lawsuit against the defendant was not "an immediate, foreseeable result of" accepting the third-party's terms of use. *Id.* at 1208.

First, while the Court agrees that the plaint text of § 2 seems to limits the FAA to "controversies that actually stem from the contract containing the arbitration clause," *Revitch*, 977 F.3d at 723-24 (O'Scannlain, J., concurring); the Supreme Court rejected a similar exception to the FAA for cases where

---

[9] Notably, this inquiry becomes muddled where, as here, there is a delegation clause requiring an arbitrator to determine arbitrability, which may include the question of whether a claim "arises out of" the underlying contract.

the defendant's argument for arbitration was "wholly groundless" because the claims were so far attenuated from the underlying contract. *See Henry Schein*, 586 U.S. at 68. Particularly relevant here, the Supreme Court held: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id. Henry* makes it clear that the Court has no power to determine whether a claim is arbitrable, or "arises out of" the underlying contract, where, as here, there is a delegation clause. *Id.*

Additionally, without opining on the arbitrability of Plaintiffs' specific claims at this stage, the Court disagrees with Plaintiffs that their claims are so far attenuated from Uber's Terms of Use that the Court should not apply the FAA and the pro-arbitration canons of construction. Unlike in *Calderon* where the defendant was not a party to the arbitration agreement, each Plaintiff here entered into an Arbitration Agreement with Uber. *See* O'Connor Aff., ECF No. 18-3 ¶¶ 9, 15, 21. Additionally, the Terms of Use govern the relationship between a Rider and Uber and what should occur if Riders bring a lawsuit against Uber. *See* Dec. 2021 Terms of Use, ECF No. 18-6. The dispute here is against Uber, for a car accident that

occurred during an Uber trip. *See generally* Compl., ECF No. 1.
The instant lawsuit is exactly the type of lawsuit that a
reasonable Rider would expect to have to arbitrate after
accepting the Terms of Use.

Moreover, even if the Court did not apply the strong pro-
arbitration canon that accompanies application of the FAA,
Plaintiffs have not pointed to any authority suggesting that
application of D.C.'s contract or arbitration law would yield a
different result. In fact, D.C.'s case law also "express[es] a
strong preference favoring arbitration when a contract contains
an arbitration clause." *TRG Customer Sols., Inc. v. Smith*, 226
A.3d 751, 755 (D.C. 2020); *see* D.C. Code § 16-4406, 4407; *Carter
v. Cathedral Ave. Coop., Inc.*, 566 A.2d 716, 717 (D.C. 1989).

### C. The Remaining Issues Shall be Determined by the Arbitrator, Not the Court

Given the Court's conclusion that an agreement was formed
between the parties to arbitrate disputes, the Court turns to
Plaintiffs' remaining arguments. First, Plaintiffs argue that
their claims are not arbitrable because they do not "arise out
of" Uber's Terms of Use as required by the Arbitration
Agreement. Pls.' Opp., ECF No. 21 at 21-25. Second, Plaintiffs
contend that the agreement is an unconscionable, unenforceable
"infinite arbitration clause." *Id.* at 27-31. Uber points the
Court to the Delegation Clause contained within the agreed upon

Terms of Use, arguing that an arbitrator, not the Court, must resolve these remaining issues. *See* Uber's Mot., ECF No. 18-1 at 15-16. The Delegation Clause requires an arbitrator rather than the Court to resolve threshold issues, including the scope of the Arbitration Agreement and contract validity. *See* Dec. 2021 Terms of Use, ECF No. 18-6 at 6. Since enforcing the Delegation Clause would send Plaintiffs remaining challenges to an arbitrator, the Court examines any challenges to the Delegation Clause first. *See Rent-A-Center*, 561 U.S. at 71-75.

### 1. The Delegation Clause is Enforceable

"The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* at 68, 70. Here, the parties do not dispute, and the Court agrees, that they "clearly and unmistakably" agreed to delegate a host of threshold issues to an arbitrator. *See AT&T Techs., Inc.*, 475 U.S. at 649; *see Mercandante*, 78 F. Supp. 3d at 138-39 (concluding the parties "clearly and unmistakably" provided for an arbitrator to determine threshold questions even where agreement merely outlined that the American Arbitration Association rules governed). The Delegation Clause states, in part:

> Only an arbitrator, and not any federal,
> state, or local court or agency, shall have
> exclusive authority to resolve any dispute
> arising out of or relating to the
> interpretation,                    applicability,

> enforceability, or formation of this
> Arbitration Agreement, including without
> limitation any claim that all or any part of
> this Arbitration Agreement is void or
> voidable.

Dec. 2021 Terms of Use, ECF No. 18-6 at 6. The clause goes on to
include that an arbitrator shall resolve "all threshold
arbitrability issues relating to whether the Terms are
applicable, unconscionable, or illusory and any defense to
arbitration . . . ." *Id.*

However, before the Court sends any issues to the
arbitrator, the Court must consider any challenges to the
Delegation Clause. *See Rent-A-Center*, 561 U.S. at 71 ("If a
party challenges the validity under § 2 of the precise agreement
to arbitrate at issue, the federal court must consider the
challenge before ordering compliance with that agreement under §
4."). "Such challenges, pursuant to the applicable state law,
include contract defenses such as fraud in the inducement,
duress, and unconscionability." *Mercadante*, 78 F. Supp. 3d at
137. Here, Plaintiffs assert that the Delegation Clause is
unconscionable and against public policy. *See* Pls.' Opp., ECF
No. 21 at 34-35. While Uber's response does not address the
validity of the Delegation Clause itself, *see generally* Uber's
Reply, ECF No. 23 at 7-9 (focusing on the question of
arbitrability once a court determines there is a delegation
clause); Uber argues that the Arbitration Agreement as a whole

"contains significant safeguards for users such as Plaintiffs."
*Id.* at 11.

The Court concludes that Plaintiffs have failed to
establish any genuine dispute of material fact as to the
validity and enforceability of the Delegation Clause.[10]
Plaintiffs' assertions that the Delegation Clause is
unconscionable and against public policy are unsupported by any
authority or evidence separate from their arguments that the
Arbitration Agreement as a whole is unconscionable. *See
generally* Pls.' Opp., ECF No. 21 at 34–35; *Rent-A-Center*, 561
U.S. at 71-75. Plaintiffs offer no evidence, nor arguments even,
that the Delegation Clause itself is "unreasonably favorable to
the other party" or that they had no "meaningful choice" when
entering into the agreement to delegate. *See Doucette v. Neutron
Holdings, Inc.*, 288 A.3d 339, 342 (D.C. 2023). Without more, the
Court concludes that the Delegation Clause is valid and
enforceable.

Given that the parties have agreed to delegate threshold
questions to an arbitrator, the Court concludes that arbitration
is proper at this stage in the litigation. *See Henry Schein*, 586

---

[10] While the Court must consider whether the Delegation Clause is
unconscionable, the question of whether the Arbitration
Agreement as a whole is unconscionable or otherwise
unenforceable is not a question for the Court at this stage of
the proceeding.

U.S. at 68-69; *Rent-A-Center*, 561 U.S. at 71-75. Accordingly, the Court **GRANTS** Uber's Motion to Compel Arbitration and stays the proceedings against all Defendants.[11]

### III. Conclusion

For the foregoing reasons the Court **GRANTS** Uber's Motion to Compel Arbitration, ECF No. 18; **DENIES** Uber's Motion to Dismiss, ECF No. 18; **DENIES** Plaintiffs' Motion for a Surreply, ECF No. 24; and **STAYS** proceedings pending the outcome of arbitration. An appropriate order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
          **United States District Judge**
          **March 17, 2025**

---

[11] While Uber requests dismissal of the claims against it and Rasier, LLC, and a stay of proceedings against the remaining Defendants, the Court concludes that a stay is appropriate for all Defendants. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024).